**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**


**ELIJAH BEN PASCHELKE,**

       **Petitioner,**

  **v.**
                                      **Civil Action No. 3:11CV77**
                                        **Criminal No. 3:07CR97-002**
                                        **(Judge Bailey)**


**UNITED STATES OF AMERICA,**

       **Respondent.**


**REPORT AND RECOMMENDATION**

**I. Background**

On September 13, 2011, Petitioner Elijah Ben Paschelke, a Federal Bureau of Prison inmate, filed a petition under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. (Doc.116). The Government filed its response on October 13, 2011. (Doc. 129). Petitioner filed a reply to the Government's response on November 14, 2011. (Doc. 131).

**II. Facts**

**1.**     **Conviction and Sentence**

On November 14, 2007, Petitioner was named in a six count indictment in the Northern District of West Virginia. Petitioner was charged with one count of conspiracy and four counts of possession with intent to distribute and manufacture marijuana. On April 2, 2008, Brian C. Crockett, Assistant federal Public Defender ("AFPD") was appointed to represent Petitioner. On November 12, 2008, L. Richard Walker, also an AFPD made a notice of appearance on Petitioner's behalf

1

because Mr. Crockett had left the employment of the Federal Public Defender Officer. Mr. Walker's

representation of Petitioner continued through his direct appeal.[1]

On June 4, 2008, Petitioner signed a plea agreement with the United States. On June 30, 2008,

Petitioner appeared before Magistrate Judge Joel to enter a plea pursuant to said agreement. After

being placed under oath, Petitioner indicated that he had been treated for schizophrenia during

December 2007 while detained in San Diego, California. Based upon Petitioner's representation, he

was sent to the Federal Correctional Complex at Butner, North Carolina for a forensic evaluation.

Petitioner was evaluated at FCC Butner from October 23, 2008 to December 8, 2008. In

assessing Petitioner's level of functioning, the following measures were employed: (1) Clinical

Interviews; (2) Mental Status Examination; (3) Kaufman Brief Intelligence Report-Second Edition;

(4) Minnesota Multiphasic Personality Interview - Second Edition ("MMPI-2"); and (5) Georgia

Court Competency Test. On December 10, 2008, a Forensic Evaluation was prepared by Manuel E.

Gutierrez, Psy.D., Forensic Psychologist. The evaluation notes that Petitioner's overall intellectual

functioning falls in the Average Range. No significant difference was observed between his Verbal

and Nonverbal scores, suggesting that his crystalized and fluid intelligence are equally developed.

Petitioner's results on the MMPI-2 reflected that he may be suspicious of others' motives, and he may

blame others for his own difficulties and shortcomings. Significantly, the evaluation concludes that

Petitioner "possesses adequate factual and rational understanding of the proceedings against him.

In addition he is able to assist his attorney in his defense. Consequently, it is recommended that

[Petitioner] be found competent to stand trial/plead guilty."See Forensic Evaluation, p. 8).

---

[1]Mr. Walker was assisted in Petitioner's representation by Nicholas Compton, Mr. Crockett's replacement as the AFPD in the Martinsburg Division.

Following this evaluation, a second plea hearing was conducted on February 12, 2009. After Petitioner was placed under oath, he testified that he had discussed the plea agreement with his attorney, he testified that he understood the possible sentences and applicable Sentencing Guidelines and had discussed the Guidelines with his attorney, and Petitioner also indicated that he understood that the plea agreement did not promise a specific sentence. Petitioner and counsel indicated that Petitioner understood that the plea agreement contained an appellate waiver provision and that Petitioner understood the ramifications of this waiver. Further, Petitioner indicated that he was satisfied with AFPD's assistance in his case. Based on the foregoing, the Magistrate Judge found that Petitioner was competent to enter a guilty plea and that Petitioner's plea was knowing and voluntary. Therefore, the Magistrate Judge accepted Petitioner's guilty plea to Count 6 of the Indictment, charging him with the manufacture of 465 marijuana plants, in violation of Title 21, United States Code, Section 841(a)(1).

Following the plea hearing, the Probation Office prepared a Presentence Report (PSR) that included a written version of the offense prepared by petitioner, himself, in which he admitted that he had involved himself with and assisted marijuana dealers, suppliers and manufacturers. The PSR also reflected that Petitioner had fifteen felony and misdemeanor convictions from 1992 to 2007, all by way of guilty pleas.

Based upon Petitioners's mental health issues, the AFPD sought a sentence below the sentencing guideline range. (Doc. 81). As mitigation, the AFPD contended that Petitioner had "a long and documented history of mental illness" which was meticulously outlined in the PSA. Although the AFPD argued that there was a "causal relationship between [petitioner's] mental illness and the offense conduct," he also suggested by the case law he relied upon that there was no link

between the defendant's mental illness and the offense of conviction.

On July 14, 2009, Petitioner appeared in District Court for his sentencing hearing. Two AFPDs (Mr. Walker and Mr. Compton) appeared as counsel for Petitioner. At this hearing, Petitioner indicated that he had received the PSR and reviewed it with counsel on several occasions. His counsel argued for the court to apply a variance from the guideline sentencing range based on Petitioner's mental health history. Then, during allocution, Petitioner attempted to minimize his involvement with his co-defendant on the count of conviction. However, at no time did the Petitioner claim hat he was not mentally competent to enter his plea, nor did he claim that he had been denied his medications or that he was dissatisfied with the AFPD's handling of his case. Petitioner was sentenced by the District Court to a term of imprisonment of 188 months.

## 2.     Appeal

Petitioner appealed on July 21, 2009. Petitioner's counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), concluding that there were no nonfrivolous issues to raise on appeal. Counsel did, however, raise the issues which Petition wanted addressed in the appeal:

> (1) Did the Magistrate Judge commit plain error when accepting defendant's guilty plea?

> (2) Did the Magistrate Judge commit plain error when finding that defendant made a knowing, intelligent and voluntary plea?

In response, the Government moved to dismiss based on Petitioner's appellate waiver in his plea agreement. Subsequently, in an unpublished opinion issued on June 8, 2010, the Fourth Circuit concluded that Petitioner knowingly and voluntarily waived the right to appeal his sentence. The Court, therefore, granted the Government's motion to dismiss in part and declined to perform any Anders review of Petitioner's sentence. The Court then considered Petitioner's challenge to the

adequacy of the Rule 11 hearing.  After review of  the plea hearing transcript the Court concluded:

> that the district court substantially complied with the mandates of Rule 11 in accepting [Petitioner's] guilty plea and that the court's omissions did not affect [Petitioner's] substantial rights.  **Critically, the transcript reveals** that the district court ensured the plea was supported by an independent factual basis and **that [Petitioner] entered the plea knowingly and voluntarily with an understanding of the consequences**.  (Citation omitted) (Emphasis added).  Accordingly, [the court] discerns no plain error.

See United States v. Paschelke, 382 Fed. Appx. 262, 2010 WL 2294631 (4th Cir. 2010)**.**

**3.      Federal Habeas Corpus**

In response Petitioner now seeks to have his conviction and sentence vacated pursuant to 28 USC § 2255.

### III. Contentions of the Parties

**1.      The Petition**

Petitioner raises twelve claims in the instant § 2255 motion:

1. Petitioner is a schizophrenic who was not taking his psychiatric medications at the time of his plea which should render it invalid;

2. The psychiatric evaluation conducted at FCC Butner was not accurate when it stated that Petitioner had no mental illness and Petitioner actually suffers from schizophrenia;

3. Petitioner was legally insane at the time of the commission of the crime, and Petitioner's counsel should have utilized an insanity defense;

4. Petitioner's counsel failed to conduct a competent pretrial investigation;

5. Petitioner's counsel failed to recognize conflicting psychiatric records;

6. Petitioner's counsel advised Petitioner not to cooperate with FCC Butner doctors during the forensic evaluation;

7. Petitioner's counsel failed to investigate Petitioner's mental health history;

5

8. Petitioner's counsel deprived him of a defense;

9.Petitioner's counsel failed to order an independent psychiatric evaluation when such an evaluation was clearly warranted;

10. Petitioner's counsel failed to explore an insanity defense;

11. Petitioner claims he is not guilty of the crime to which he pled guilty; and,

12. Petitioner's counsel spent insufficient time with him prior to his plea.

## 2. The Response

In its response, the Government indicates that many of Petitioner's claims overlap; however, it addresses each of his claims and moves for the petition to be denied and dismissed with prejudice.

## 3. The Reply

In reply, Petitioner continues to argue that he suffers from schizophrenia. Moreover, he argues that he suffers from a level of schizophrenia severe enough that was "put on" SSI in 2007 because of extreme mental illness that renders him unable to function normally in society. Petitioner maintains that Butner's diagnosis that he was free of all mental illness was a misdiagnosis and renders his plea invalid. Petitioner further alleges that the AFPD did not bother to review his psychiatric records  before the change of plea hearing, and therefore, did not know that he was schizophrenic and was so at the time of the commission of the crime. Petitioner maintains that if the AFPD had argued his mental illness at the change of plea hearing, the outcome of the case would have been different.

## IV. Standard of Proof

### A. Petitioner's Burden of Proof

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving his

sentence or conviction was imposed in violation of the Constitution or laws of the United States; that

the court was without jurisdiction to impose such a sentence, that the sentence exceeded the

maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C.

§ 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires

the petitioner to establish his grounds by a preponderance of the evidence.  Jacobs v. United States,

350 F.2d 571, 574 (4th Cir. 1965); Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va.

Jan. 4, 2006);. Hall v. United States, 30 F.Supp.2d 883, 889 (E.D.Va. 1998).  The Court may decide

a § 2255 Motion without an evidentiary hearing if "the motion and the files and records of the case

conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see United States v.

Yearwood, 863 F.2d 6, 7 (4th Cir. 1988); Zhan Gao v. United States, 375 F.Supp.2d 456, 459 n.1

(E.D.Va. 2005).

**B. § 2255 Standard**

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence

imposed in a separate proceeding.  To succeed on such a motion, the movant must prove that the

conviction or sentence was imposed in violation of the laws or Constitution of the United States; or

the court in imposing sentence lacked jurisdiction; or the sentence exceeded the maximum authorized

by law; or the sentence was otherwise subject to collateral attack**.**  United States v. Lemaster, 403

F.3d 216, 221 (2005)(citations omitted).28 U.S.C. § 2255.  Because a 2255 motion seeks to deny,

evade, or impeach a judgment, claims of error that have previously been raised and rejected on direct

appeal of that judgment may not be raised again in a § 2255 motion.  United States v.  Harrison, No.

96- 7579, 1997 WL 499671, at *1 ( 4th Cir. August 25, 1997) (unpublished).

Nonetheless**,** a 2255 motion is not an alternative to filing a direct appeal. United States v.

Frady, 456 U.S. 152, 165 (1982).  Non-constitutional claims that  **could** have been raised on direct

appeal, but were not, may not be asserted in collateral proceedings. Stone v. Powell, 428 U.S. 465,

477, n.10, (1976)(citing *Davis v. United States*, 417 U.S. 333, 345-46 and n.15 (1974); Sunal v.

Large, 332 U.S. 174, 178-79 (1947)); see also United States v. Linder, 552 F.3d 391, 396-97 (4ᵗʰ Cir.

2009)("A petitioner who waives the right to appeal is not precluded from filing a petition for

collateral review. But he is precluded from raising claims that are the sort that **could have** been raised

on appeal.")(Quoting Brian R. Means Fed. Habeas Practitioner Guide, Jurisdiction ¶ 1.23.0)(2006-

2007) (emphasis in the original) (internal citations omitted). Non-constitutional claims that **could**

**have** been asserted on direct appeal may be raised in a § 2255 motion only if the alleged error

constituted "a fundamental defect which inherently results in a complete miscarriage of justice"

Stone, 428 U.S. 477 n. 10 (quoting Davis, 417 U.S. at 346; Hill v. United States, 368 U.S. 424, 428

(1962)) or is "inconsistent with the rudimentary demands of fair procedure." United States v.

Timmereck, 441 U.S. 780, 784 (1979).

Similarly, a constitutional error that could have been, but was not raised on appeal, may not

be raised for the first time in a 2255 motion, unless the movant can show either (1) "cause" that

excuses the failure to raise the error on appeal and "actual prejudice" resulting from the error, or (2)

that a miscarriage of justice would occur if the court refuses to entertain a collateral attack Massaro

v. United States, 538 U.S. 500, 504 (2003) (citing Bousley v. United States, 523 U.S. 614, 621-22

(1998)); Frady, 456 U.S. at 167-68; United States v. Mikalajunas, 186 F.3d 490, 492-93 (4ᵗʰ Cir.

1999).   To establish "actual prejudice,"   The movant must show that the alleged error resulted in

an"actual and substantial disadvantage," rather than a mere possibility of prejudice. Satcher v. Pruett,

126 F.3d 561, 572 (4ᵗʰ Cir. 1977)(quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).   To

demonstrate a miscarriage of justice, the movement must prove "actual innocence" of the crime for which he was convicted, substantiating that "it is more likely than not, in light of all the evidence, that no reasonable juror would have convicted him." Bousley, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)).

A guilty plea further diminishes the scope of potential claims available under 2255. "When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Bundy, 392 F.3d 641, 644 (4th Cir.2004). The "guilty plea represents a break in the chain of events which has preceded it in the criminal process." Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Thus, the defendant who has pled guilty "has no non-jurisdictional ground upon which to attack that judgment except the inadequacy of the plea," Bundy, 392 F.3d at 644-45, or the government's "power to bring any indictment at all," Broce, 488 U.S. at 575, 109 S.Ct. 757; see United States v. Bluso, 519 F.2d 473, 474 (4th Cir.1975) ("A guilty plea is normally understood as a lid on the box, whatever is in it, not a platform from which to explore further possibilities."); see also Blackledge v. Perry, 417 U.S. 21, 29-30, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) ("[W]hen a criminal defendant enters a guilty plea, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. Rather, a person complaining of such antecedent constitutional violations is limited ... to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." (internal quotation marks and citations omitted)).

## V. Analysis

**A. Validity of Plea**

Petitioner attacks the validity of his plea in a number of the claims raised in his petition.  In Ground One, he alleges that he is a schizophrenic and was not taking his medication at the time of his plea. In ground two, he alleges that the **e**valuation conducted at FCC Butner was not accurate when it stated that he had no mental illness when he suffers from schizophrenia. In Ground Eleven, he argues that he was not guilty of the crime alleged in the count of conviction.  In ground twelve, he alleges that his counsel spent insufficient time with him prior to the plea.

"A criminal defendant may not be tried unless he is competent, and he may not waive his right to counsel or plead guilty unless he does so competently and intelligently." Godinez v. Moran, 509 U.S. 389, 396 (1997)(internal citations and quotations omitted). Moreover, competency to stand trial is based on (1) "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and (2) "has a rational as well as factual understanding of the proceedings against him." Id. The same standard applies to competency to plead guilty. Id. at 398-399.

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, before a court accepts a guilty plea, the court must determine that the defendant is competent to enter the plea and that the plea is knowing and voluntary.  Rule 11 requires that the court personally inform the defendant of, and ensure that he understands, the nature of the charges against him and the consequences of his guilty plea. United States v. Damon, 191 F.3d 561, 564 (4th Cir. 1999). In doing so, the Court must discuss the nature of the charges against the defendant, the penalties that could be imposed, and certain other terms or conditions of the plea agreement. Id. The Court then must establish that the defendant is entering the plea voluntarily – without force, threats, or promises made outside the agreement. Rule 11(b)(2).

In this case, Petitioner challenged his plea on appeal, and the Fourth Circuit affirmed his

conviction and dismissed any appeal of his sentence. In so doing, the Fourth Circuit concluded that:

> the district court substantially complied with the mandates of Rule
> 11 in accepting Paschelke's guilty plea and that the court's omissions
> did not affect Paschelke's substantial rights. Critically, the transcript
> reveals that the district court ensured the plea was supported by an
> independent factual basis and that Paschelke entered the plea knowingly
> and voluntarily with an understanding of the consequences.

U.S. v. Paschelke, 382 Fed. Appx. 262, 263 (4th Cir. June 8, 2010).

Accordingly, because the Fourth Circuit has determined that the plea was valid, this court did

not err in finding Petitioner competent to plead guilty, and his collateral attack on the validity of his

guilty plea is baseless. Because a 2255 motion seeks to deny, evade, or impeach a judgment, claims

of error that have previously been raised and rejected on direct appeal of that judgment may not be

raised again in a § 2255 motion. United States v. Harrison, No. 96- 7579, 1997 WL 499671, at *1

( 4th Cir. August 25, 1997) (unpublished).

**B. Ineffective Assistance of Counsel**

The remainder of Petitioner's claims pertain to allegations that are best characterized as

ineffective assistance of counsel. While claims of ineffective assistance of counsel arising before the

entry of a plea are ordinarily waived by a valid plea, the agreement in this case provides as follows:

> Defendant also waives his right to challenge his sentence or the
> manner in which it was determined in any collateral attack, including
> but not limited to, a motion brought under Title 28 U.S.C. § 2255 (habeas
> corpus)**. Ineffective assistance of counsel is excluded from this waiver**.

(Doc. 76, p. 4)(emphasis added).

Therefore, the undersigned will address Petitioner's claims of ineffective assistance of

counsel, all of which appear to involve actions or inactions which occurred before the plea hearing.

11

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." *Id.* Second, "the defendant must show that the deficient performance prejudiced the defense." *Id.* These two prongs are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" Hunt v. Lee, 291 F.3d 284, 289 (4th Cir. 2002). Furthermore, the standard of reasonableness is objective, not subjective. See Strickland, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be reversed. *See id.* at 691. In the context of a guilty plea, a petitioner must demonstrate that there is a reasonable probability that but for his attorney's alleged mistakes, he would not have pled guilty and instead would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). The Fourth Circuit has recognized that if a defendant "cannot demonstrate the requisite prejudice, a reviewing

court need not consider the performance prong." Fields, 956 F.2d at 1297.

The Fourth Circuit has set forth two categories of decisions made by trial counsel when analyzing ineffective assistance of counsel claims. First, there are "personal" decisions that require the defendant's consent, such as the decision to enter a guilty plea, the decision to waive a trial by jury, the decision to appeal, and the decision of whether to testify at trial. Sexton v. French, 163 F.3d 874, 885 (4th Cir. 1998) (citations omitted). The second category includes decisions that "'primarily involve trial strategy and tactics,' such as 'what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." Id. (quoting United States v. Teague, 953 F.2d 1525, 1531 (11th Cir. 1992)). Accordingly, "[t]here is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." Harrington v. Richter, 131 S. Ct. 770, 790 (2011) (citations omitted) (internal quotation marks omitted).

Further, in evaluating a post-guilty plea of ineffective assistance of counsel, statements made under oath affirming satisfaction with counsel are binding, absent clear and convincing evidence to the contrary. See Blackledge v. Allison, 431 U.S. 63, 74-75 (1977). A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: "he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988), cert. denied, 488 U.S. 843 (1988).

Petitioner raises eight allegations regarding ineffective assistance of counsel. Many of them overlap, and it is clear that none of his claims warrant reversal of his conviction.

First, Petitioner maintains that he was legally insane at the time of the commission of the

crime, and his counsel should have utilized an insanity defense. In support of this argument, Petitioner maintains that his counsel was in possession of his medical records and was aware of his needs. The medical records to which Petition refers are from California. Some are from the Presidio Medical Group in 2002, and indicate that he was under the care of James A. Nocak, MD for Anxiety/Insomnia/Weight Loss. It would appear that Dr. Novack discussed petitioner's use of cannibis for the treatment of his symptoms. The other records are from the State of California and appear to have been generated during his incarceration in a state facility during 2005 and 2006. Those records indicate that Petitioner had a history of Bipolar Disorder. In addition, he was hospitalized from March 1, 2006, to March 7, 2006, for psychiatric treatment. He was admitted because of the history of Bipolar Disorder, and because he was hyperverbal, agitated, paranoid, and non-compliant with psychiatric medications. His discharge diagnosis was Probable Schizoaffective Disorder and Antisocial Personality Traits. Medical record from the California Department of Corrections and Rehabilitation, Division of Adult Parole Operations, indicate that Petitioner received the following diagnosis in May 9, 2006: Psychotic Disorder, NOS[2], Schizophrenia, Paranoid Type and Antisocial Personality Disorder. These records do not indicate that Petitioner was legally insane in 2005 and 2006, and do not reflect on his mental condition from early 2000 to November 2003, the dates during which the criminal activity involved in the instant case occurred. Despite Petitioner's assertions to the contrary, there is nothing in the records that would indicate Petitioner was "legally insane," when he committed the crime to which he pleaded guilty and nothing which would have warranted the AFPD to pursue an insanity defense.

Second, Petitioner alleges that his counsel failed to conduct a competent pretrial investigation.

---

[2]NOS in an abbreviation for Not Otherwise Specified.

Specifically, Petitioner alleges had counsel noted the vast history of mental illness in his psychiatric records, then conducted a pre-trial investigation into his mental history, counsel would have discovered records of severe mental illness dating back 25 years. However, Petitioner's assertion that his counsel was ineffective for failing to conduct an adequate pretrial investigation is in direct conflict with his testimony at the plea hearing:

> The Court: Have your lawyers at the Public Defender's Office adequately represented you in this matter?
>
> The Defendant: Yes.
>
> The Court: Is there anything you think they should have done that they didn't do, or anything they did improperly regarding their representation of you?
>
> The Defendant: No.

(Doc. 90, p. 30). The Fourth Circuit has already affirmed the validity of Petitioner's plea.

Moreover, the record from the initially scheduled plea hearing indicates that the first AFPD was made aware by Petitioner of his mental health issues, had been advised by Petitioner that he had been given a "clean bill of health," and was going to make efforts to secure his medical records from the authorities in California. (Doc. 125, p. 8). Furthermore, this AFPD indicated that Petitioner had not exhibited any sort of current medical deficiencies in his meetings with him." (Id. at 6). Finally, the AFPD noted we can continue this until we can receive – obtain the documentation to confirm his current medical condition....that would also mean we have to continue the trial, because his medical condition would play a role in the trial, I think." (Id. at 7). At the rescheduled Rule 11 hearing, the second AFPD indicated that he had reviewed the FCC Butner report extensively with Petitioner and was confident that Petitioner was competent to proceed. (Doc. 90, pp. 5-7).

Petitioner has pointed to nothing in the record and has produced nothing new which would call into question his counsel's pre-trial investigation. Despite his assertions to the contrary, Petitioner has not demonstrated that any medical records predating his evaluation at FCC Butner and entry of his plea demonstrate that he had a serious mental disease or defect.

Third, Petitioner alleges that counsel failed to recognize conflicting psychiatric records. In arguing this ground, Petitioner contends that if counsel had addressed the issue of the Butner report which contradicted the years of psychiatric evidence in his case file, the outcome of the case probably would have been different. As with many of his arguments under the umbrella of ineffective assistance of counsel, the Petitioner is making a veiled reference to the validity of his plea. However, that issue was addressed on appeal to the Fourth Circuit, and cannot be revised in this habeas petition.

Fourth, Petitioner alleges that counsel advised him not to cooperate with doctors at the Butner evaluation. The undersigned notes that the Forensic Evaluation from Butner indicates that Petitioner declined to answer questions during the clinical interviews, indicating that he was acting under advice of counsel. (Forensic Evaluation, Page 3). However, beyond Petitioner's blanket allegation, the undersigned can find no support for the same. Furthermore, Petitioner fails to identify why counsel would give such advice. Clearly, as established at the initial plea hearing, counsel was made aware of Petitioner's past mental health issues and understood they might be significant if the case were to proceed to trial. Therefore, the undersigned can find no credence in Petitioner's allegation, nor conclude that the same, if true, amounted to ineffective assistance of counsel as opposed to trial strategy.

Fifth, petitioner alleges that counsel failed to investigate his psychiatric background. In advancing this allegation, Petitioner makes similar arguments to those advanced in several of his

16

claims of ineffective assistance of counsel. Petitioner generally alleges that contrary to the report from Butner, his records demonstrate multiple involuntary commitments at various state and private hospitals as well as evidence of multiple suicide accounts. However, the records tendered by the petitioner are from his incarceration in California and did not demonstrate that he suffered a serious mental illness, or that he was "legally" insane. The pertinent fact is that the forensic evaluation from Butner resulted in the conclusion that Petitioner possessed adequate factional and rational understanding of the proceedings against him and was able to assist his attorney in his defense.

Sixth, Petitioner alleges that counsel deprived him of a defense. More specifically, Petitioner alleges that counsel deprived him of an adequate opportunity to pursue a possible insanity defense. This is a restatement of his first ground of alleged ineffective assistance: that counsel should have utilized an insanity defense. For the reasons stated previously, the petitioner has not demonstrated that there was plausible evidence to support that defense.

Seventh, Petitioner alleges that counsel failed to order an independent psychiatric evaluation. More specifically, Petitioner maintains that when faced with contradictory psychiatric reports from Butner and the extensive reports in his possession, counsel erred by not filing a motion for an independent psychiatric examination pursuant to 18 U.S.C. § 3006(e).

As discussed earlier, the AFPD at the initial plea hearing did not believe that Petitioner was suffering from any significant mental illness or defect. However, Petitioner was sent for a forensic evaluation, and nothing in Petitioner's previous medical records provides information that contradicts that report. There was simply no basis from which counsel could have requested an independent evaluation.

Finally, Petitioner alleges that counsel failed to explore an insanity defense. This again, is

17

a restatement of his first allegation of ineffective assistance of counsel and fails for the same reasons.

In conclusion, it appears clear from the initial plea hearing that the AFPD did not believe that Petitioner suffered from a serious mental condition. Moreover, after receiving the reports from Petitioner's incarceration in California, and the forensic evaluation from Butner, it is apparent counsel did not believe Petitioner had a viable insanity defense. Instead, counsel believed that Petitioner's documented history of mental illness constituted a mitigating factor at sentencing. In his Sentencing memorandum, counsel argued vehemently for the Court to consider Petitioner's mental health as a basis for a reduced sentence.

A criminal defendant is not entitled to "receive the **best** possible representation at trial, Strickland only requires adequate counsel judged by a standard of reasonableness in light of the prevailing norms of practice." Hunt v. Nuth, 57 F.3d 1327, 1333 (4th Cir. 1995). Furthermore, the Court needs to be highly deferential in scrutinizing counsel's performance and must filter from its analysis the distorting effects of hindsight. Strickland 466 U.S.. At 688-689; Bunch v. Thompson, 949 F.2d 1354 (4th Cir. 1991).

In the instant case, Petitioner entered a guilty plea, which has been adjudicated valid by the Fourth Circuit on appeal. His attempt to collaterally attack his conviction and sentence through his claims of ineffective assistance of counsel are woefully short of what is required following a guilty plea.

### VI. Recommendation

Based on the foregoing, the undersigned recommends the petitioner's §2255 petition be **DENIED and DISMISSED WITH PREJUDICE**. Within fourteen (14) days after being served with a copy of this Recommendation, any party may filed with the Clerk of the Court, written

objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: March 3, 2014

s/ *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

7011 0470 0000 0397 8687

## U.S. Postal Service™
## CERTIFIED MAIL™ RECEIPT
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified | |
| Return Receipt (Endorsement Requ | |
| Restricted Delivery (Endorsement Requ | |
| Total Postage & | |

Elijah Ben Paschelke
05 698298
TUCSON
FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P O BOX 23811
TUCSON, AZ 85734
3 07cr97 #145

mark
e

Sent To

Street, Apt. No.;
or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006                    See Reverse for Instructions